Owen, J.
The defendants below, conceding that Society Perun had never been a corporation de jure, maintain that the court below should have permitted them to prove that such society was a de facto corporation ; that it attempted, in good faith, to become a body corporate; proceeded to act and transact business in good faith under the supposed authority of incorporation, and that its acts ought not to have been declared to be wholly void as against the city of Cleveland.
The judgment of ouster was an adjudication between the state and the society upon the right of the latter to exercise corporate franchises. For the purposes of such adjudication it was competent for this court to consider and determine what had been its status from its first attempt to incorporate. But it had no power to pass upon or determine the rights of parties not before it.
It was not competent for this court to determine in that proceeding that Society Pei’un had never been a corpora.tion de facto, or that its acts and business transactions, un *490 der the color of its supposed charter powers, were void. The authority of the court in that behalf was derived from sec. 6774 (Rev. Stats.), which provides: “When a defendant is found guilty of usurping, intruding into, or unlawfully holding or exercising an office, franchise, or privilege, judgment shall be rendered that such defendant be ousted and altogether excluded therefrom, and that the relator recover his costs.”
When the court had excluded the society from its franchises to be a corporation, it exhausted its jurisdiction over the subject-matter. It had no power to speak concerning whatever rights may have been acquired by the society as a corporation de facto, or by third parties in their transactions with it as an acting corporation.
It is conceded by the city that parties who had recognized the existence of the society by their transactions with it as a supposed corporation are estopped to deny its corporate existence. But it is maintained that the city, having engaged in no transactions with it, is free to challenge its existence as a corporation de facto as well as de jure. The argument is that: “No case can be found where it is held that there is a corporation de facto against persons who have in no way recognized its existence as a corporation,” and that: “ The notion of'a defacto corporation is based on the doctrine of estoppel; when estoppel can not be invoked there can be no de facto corporation.”
The theory that a defacto corporation has no real existence, that it.is a mere phantom, to be invoked only by that rule of estoppel which forbids a party who has dealt with a pretended corporation to deny its corporate existence, has no foundation, either in reason or authority. A de facto corporation is a reality. It has an actual and substantial legal’existence. It is, as the term implies, a corporation. '
“ It is a self-evident proposition that a contract can not be made with a corporation unless the corporation be in existence at the time. A real contract with an imaginary corporation is as impossible, in the nature of things, as a real' contract with an imaginary person. It is essential, therefore, in order to establish the existence of a contract *491 with, a corporation, to show that the corporation was in existence, at least defacto, at the time the contract was made.” Morawetz Private Corporations, sec. 137.
It is bound by all such acts as it might rightfully perform as a corporation de jure. Where it has attempted in good faith to assume corporate powers; where its proceedings in that behalf are colorable, and are approved by those officers of the state who are authorized to act in that regard;, where it has honestly proceeded for a number of years, without interference from the state, to transact business as a corporation; has been reputed and dealt with as a duly incorporated body, and valuable rights and interests have been acquired and transferred by it, no substantial reason is suggested why its corporate existence, in a suit involving such transactions, should be subject to attack by auy other-party than the state, and then only when it is called upon in a direct proceeding for that purpose,- to show by what authority it assumes to be a corporation.
Proof was offered upon the trial below to show, (1) that the persons seeking to incorporate first filed with the secretary of state a certificate which fully complied with the requirements of the statutes, and free from the defect which finally proved fatal to its existence, but which was disapproved by the attorney-general; (2) That the certificate of incorporation which was finally filed with the secretary of state recited that, “ said association has been formed and organized for the mutual protection and relief of its members, and for the payment of stipulated sums of money to the families or heirs of the deceased members of said association; that the officers of said association have been duly chosen; that for the purpose of becoming a body corporate under an act passed by the general assembly of the state of ‘Ohio, entitled, an act supplementary to an act, entitled an act to provide for the creation and regulation of incorporated companies in the state of Ohio, passed May 1,1852, passed April 20,1872;” (3) That this certificate was approved by the secretary of state, and also by the attorney-general, as provided by the statutes (69 Ohio L. *492 150); (4) That it proceeded in good faith to transact business peculiar to corporations provided for by the act under which it attempted to incorporate.
All this was excluded, and the decision of the court below practically rested on the proof offered by the city, that Society Perun had been ousted of its franchises, which was evidently construed as determining that such society had from the first no corporate existence, either dejare or defacto, and consequently no capacity to receive or.impart any interest in or title to real estate except as against such parties as were by reason of their recognition of or deal-rings with it, estopped to deny its incorporate existence.
.. Did the court err? This fairly preseuts the controlling and very important question : Was it competent to show, as against a party who was not estopped to deny its eorporate existence, that Society Perun was, at the time of the transactions involved in controversy, a corporation de facto f'
In Attorney-General ex rel. Pettee v. Stevens, Saxton (N. J. Eq.) 369, the relator sought to enjoin the Camden and Amboy R. R. and Transportation Co. and others acting under its authority from erecting a bridge over a navigable stream. The claim was that the act authorizing the corporation had been perverted and'disregarded, and that there was no legal incorporation. The relators were in no manner estopped to attack the corporate existence of the respondent. The court held:
“ Where a set of men claiming to be a legally incorporated company under an act of the legislature, have done every thing necessary to constitute them a corporation, colorably at least, if not legally, and are exercising all the powers and functions of a corporation ; they are a corporation, defacto, if not dejare; and this court will not interfere, iu an incidental way, to declare all their proceedings void, and treat them as a body having no rights or powers.”
The chancellor, speaking for the court, said:
“ Here, then, is a set of men claiming to be a legally in *493 corporate*! company under the act of the legislature, exercising all the powers and. functions of a corporation.. They are a corporation de facto, if not de jure. Every thing necessary to constitute them a corporation has been done, colorably at least, if not legally; and I do not feel at liberty, in this incidental way, to declare all their proceedings void, and treat them as a body having no rights or powers. It has been seen that the court will not do this where a corporation properly organized has plainly forfeited its privileges; and there is but little difference'in principle between the two cases. In both the corporation is actually in existence, but whether legally and rightfully so is the question. And it appears to me that if the court can take cognizance of the matter in this case, it must in all others where it can be brought up, not only directly, but incidentally.”
This case is approved and followed in National Docks R. Co. v. Central R. R. Co., 32 N. J. Eq. 755, which held: “ When a corporation existe de facto, the court of chancery can not, at the instance of private parties, restrain its operations upon the ground that its organization is not de jure. In such case the proper remedy is by quo warranto, or information in the nature thereof, instituted by the attorney-general.” The rule of estoppel found uo place in this case.
In S. & L. G. R. Co. v. S. & C. R. R. Co., 45 Cal. 680, it was held that: “If a corporation defacto is in the actual possession of a public highway, under a grant of a franchise to improve and collect tolls on the same, a mere trespasser can not justify his entry thereon on the ground that it was only a corporation defacto, and was not de jure entitled to the franchise.”
In Williams v. Kokomo B. & L. Ass’n., 89 Ind. 339, one Leach gave to an acting corporation'his mortgage on real estafe. Subsequent to the execution and recording of it, he executed another mortgage on the same land to Williamson. In a proceeding to foreclose the junior mortgage, *494 ’Williamson maintained that the pretended corporation had no legal existence, by reason of defects and omissions in the proceedings to incorporate, and that the senior mortgage was void. He was in no manner estopped, by dealings with, or recognition of, the first mortgagee to deny its corporate existence. The court held that: “Ajunior mortgagee can not defeat a senior mortgage by showing that the corporation to which the senior mortgage was executed was defectively organized, if it be a corporation defacto.” Elliot, J., said : “Where persons assume to incorporate under the laws of the state, and in part comply with their requirements, assume corporate functions and transact business as a corporation, private persons can not collaterally question the right of such an association to a corporate existence, although there has not been a full compliance with the provisions of the statute. Baker v. Neff, 73 Ind. 68. This rule is not limited to cases where one by contract admits corporate existence, but is a rule of general „ application.” It is not easy to distinguish the principle of i this case from that of the case at bar.
In Pape v. Capitol Bank, 20 Kan. 440, Pape and wife gave their notes to “James M. Spencer or bearer,” and their mortgage on real estate to secure them. Spencer transferred the notes to the Capital Bank of Topeka, an acting corporation, with this indorsement: “ Pay the bearer, without recourse on me; James M. Spencer.” The mortgage was also transferred to the bank, which proceeded by suit to collect the notes and foreclose the mortgage. Pape and wife interposed the defense that the bank was not, and never had been, a body corporate, by reason, among others, of a defective organization. 'The bank had assumed corporate functions after an attempt, in good faith, to incorporate, and for a number of years was in the actual and notorious exercise of corporate franchises. Pape had transacted banking business with the plaintiff prior to the purchase of the notes and mortgage, but such business was wholly unconnected with the notes and mort *495 gage in suit. His wife, however, had not in any manner recognized the existence of the hank as a corporate body, and the doctrine of estoppel was not invoked to aid the court in sustaining a judgment of foreclosure against Pape and wife. Brewer, J., says: “ The corporation is one de facto; and only the state can inquire, and that, in a direct proceeding, whether it be one dejare. . . . There must? in such cases, be a law under which the incorporation can be had; there must, also, be an attempt, in good faith, on the part of the corporators, to incorporate under such law; and when, after this, there has been for a series of years an actual, open, and notorious exercise, unchallenged by the state, of the powers of a corporation, one who is sued on a note held by such corporation will not be permitted to question the validity of the incorporation as a defense to the action. No mere matters of technical omission in the incorporation, no acts of forfeiture from misuser after the incorporation, are subjects of inquiry in such an action. This is not upon the ground of equitable estoppel but upon grounds of public policy. If the state, which alone can grant the authority to incorporate, remains silent during thempen and notorious assertion and exercise of corporate powers, an individual will not, unless there be some powerful equity on his side, be permitted to raise the inquiry.”
In Thompson v. Candor, 60 Ill. 244, Willetts, in February, 1858, deeded to “ Mercer Collegiate Institute,” a body pretending to be a corporation, the tract of land in controversy. He died in March, 1858. In 1868 his heirs quit-claimed their interest in the land to Thompson, who filed a bill in chancery for the cancellation of the deed from Willetts to the “Institute,” alleging, as one of the grounds of relief, that the named grantee was not legally incorporated — had no capacity to take the title, and that the deed was void. The court held:
“ Where parties endeavor to organize a corporation for educational purposes, under the general law, adopt a name, elect trustees, and organize by electing a president and officers, and the trustees had acted for years in managing *496 the property, had leased and mortgaged it, and expended a large sum of money in its improvement, these acts constitute it a corporate body defacto, and the regularity of its organization can not be questioned collaterally. Such irregularity can only be questioned by quo warranto or scire facias.”
Thornton, J., says: “ In 1856 an attempt was made to organize a corporation under the general incorporation law. A corporate name was selected, trustees were appointed, and an organization effected by the election of a president and proper officers. The trustees thus appointed acted for years in the general management of the property, leased and mortgaged it, and expended a large amount of money.. Here then was a corporate body de facto, which had been engaged in an undertaking involving important interests. The regularity of its organization can not be questioned collaterally. Any alleged noncompliance with the law can only be inquired into by the writ of quo warranto or scire facias.”
There is no suggestion throughout the entire case of the rule of estoppel as an element affecting its disposition.
In Paper Works v. Willett, 1 Robertson (N. Y. Sup.), 131, it is held that formal defects in proceedings to organize a corporation are not available to defeat an action brought by a corporation for trespass in wrongfully taking property out of its possession.
See also, as illustrating the principle under discussion: Smith v. Sheeley, 12 Wall. 361; Grand Gulf Bank v. Archer, 8 S. & M. 151, 173; Dunning v. R. R. Co. 2 Carter (Ind.), 437; Dannebroge Mining Co. v. Allment, 26 Cal. 286; Searsburgh Turnpike Co. v. Cutler, 6 Vt. 315; Mitchell v. Deeds, 49 Ill. 416; Eliz. Academy v. Lindsey, 6 Ired. 476 ; Darst v. Gale, 83 Ill. 136; Rondell v. Fay, 32 Cal. 354; De Witt v. Hastings, 40 N. Y. (Superior Court) 463; Rice v. R. R. Co., 21 Ill. 93; Douglas County v. Bolles, 94 U. S. 104; The Banks v. Poitiaux, 3 Randolph (Va.),136; Goundie v. Northampton Water Co., 7 Pa. St. 233; Baker v. Backus, 32 Ill. 79; Tarbell v. Page, 24 Ill. 46; Thornburgh v. R. R. Co., 14 Ind. 499; *497 Tar River Nav. Co. v. Neal, 3 Hawks, 520; Bear Camp River Co. v. Woodman, 2 Me. 404.
In Jones v. Dana, 24 Barb. 395, it was held that if a company has in form a charter authorizing it to act as a body corporate, and is in fact in the exercise of corporate powers at the time of taking a note from an individual, it is, as to him and all third persons, a corporation de facto, and the validity of its corporate existence can only be tested by proceedings on behalf of the people.'
In the case at bar, the certificate which was last filed by the society embraced a full statement of the objects of incorporation and indicated what the nature of its business must necessarily be, and was strongly suggestive of the manner in which it must necessarily be transacted; and while it is not our purpose to call in question the action of this court in the quo warranto proceedings, we have no hesitation in saying that if we were now called upon to determine whether the corporate life of Society Perun should be taken, the question, upon the facts offered in proof at the trial below, would not be free from doubt and difficulty. It is very clear that the proceedings to incorporate were colorable; and so far as this fact is a test of the existence of a corporation de facto, it is most amply established. That there was proof of user is manifest from the evidence which was .received without objection.
That the judgment of ouster did not and could not have a retroactive effect upon the rights of the society, and of parties who had dealt with it during its de facto existence, is suggested by the opinion of Wright, J., in Gaff v. Flesher, 33 Ohio St. 115.
The evidence which was offered and excluded would, if credited, have shown Society Perun capable of holding and transferring the legal title to the lands in controversy. Walsh v. Barton, 24 Ohio St. 43; Darst v. Gale, 83 Ill. 136 ; Shewalter v. Pirner, 55 Mo. 218; Nat. Bank v. Matthews, 98 U. S. 628 ; Goundie v. Northampton Water Co., 7 Penn. St. 233; Barrow v. Nashville Turn. Co., 9 Humph. 304; Kelly v. *498 People’s Trans. Co., 3 Ore. 189; Bogardus v. Trinity Church, 4 Sandf. Ch. 758.
The public and all persons dealing with this society were justified in assuming that the certificate filed with the secretary of state, and by him admitted to record in his office, had been approved by him, and also by the attorney-general, as required by statute (69 Ohio L. 150), and that it so far conformed to all legal requirements that, as provided m section 2 of the act of incorporation (69 Ohio L. 83), “ a copy, duly certified by the secretary of state, under the great seal of the state of Ohio, shall be evidence of the existence of such association.”
It would seem that such approval, record, and certificate, followed by uninterrupted and unchallenged user for nearly six years, of all of which proof was tendered, would constitute a corporation cle facto, if such a body is, under any circumstances, entitled to legal recognition.
The highest considerations of public policy and fair dealing protest against treating such an organization as a nullity, and all of its transactions void.
The principle of the above cases is to be distinguished from a case where a mere corporation de facto attempts to assert the power of eminent domain by the appropriation of private property to public use. It has been held that the exercise of this right (which is but a delegation of the sovereign power of the state), depends upon the sufficiency and legal validity of the certificate of incorporation and public record of its organization. R. R. Co. v. Sullivant, 5 Ohio St. 276 ; Atkinson v. R. R. Co., 15 Ohio St. 21.
The case of Raccoon River Nav. Co. v. Eagle, 29 Ohio St. 288, is relied upon by the defendant in error. It was an action to recover upon a stock subscription. A plea of nul tiel corporation was interposed. The plaintiff claimed to be organized under an act to authorize the incorporation of companies “ for the purpose of improving any stream of water . . . declared navigable by any law of the state of Ohio.” On the trial the plaintiff offered in evidence a certificate by which it appeared that the company was *499 formed for the purpose of improving, etc., Big Raccoon river. Unfortunately there was no navigable stream in Ohio by that name. No other testimony was offered. There was no proof of user. There wás no defect in the form of the proceedings to incorporate, but an attempt to organize and incorporate for a.purpose impossible of accomplishment. There was neither a de jure nor de facto corporation. Judgment was properly rendered for defendant.
In excluding proof of what was actually done looking to the incorporation of Society Perun, and of the subsequent acts of user, which was offered in evidence, there was error, for which the judgment in the first entitled case (as well as that in the same plaintiff against Hay et al., which was tried with it and involve the same general questions) are reversed. Numerous other questions are presented by the voluminous records in these cases, but as they all depend upon the one central and controlling question discussed above, and as the disposition here made of the cases must lead to a re-trial in the light of the principles indicated in this opinion, they are not separately considered.

Judgment reversed.