No. 34,591

HEART OF AMERICA INSURANCE AGENCY, INC., *Appellant,* v. WICHITA CAB & TRANSPORT COMPANY, *Appellee.*

(99 P. 2d 765)

Opinion filed March 9, 1940.

*William J. Wertz, Vincent F. Hiebsch, Forest V. McCalley* and *Milton Zacharias,* all of Wichita, for the appellant.

*John W. Blood, Francis W. Prosser* and *C. Zimmerman,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action for the balance due on the premium for a contract of insurance. The trial court held plaintiff was not entitled to the benefit of the courts of the state and could not maintain the action, and rendered judgment for defendant. Plaintiff has appealed.

The facts, stipulated in writing, may be summarized as follows: Plaintiff is a Missouri corporation, with its principal place of business at Kansas City, Mo., and is engaged in the business of acting as an insurance agent or broker. It never has made application, nor obtained authority under G. S. 1935, 17-501 *et seq.,* to transact business in this state as a foreign corporation. No officer or agent of plaintiff corporation has been licensed in this state as an insurance agent under our statutes. (G. S. 1935, 40-239, 40-240.) Defendant in a Kansas corporation, with its principal office at Wichita, and is engaged in the taxicab business in Wichita. Under an ordinance of

that city, as a condition precedent for it to conduct a taxicab business in the city, it was required to obtain and file a policy of public liability and property damage insurance, in a stated amount, covering its taxicabs operated in the city. Prior to September 27, 1937, defendant's president or manager went to the office of plaintiff at Kansas City, Mo., and there entered into a contract with plaintiff by which plaintiff was to obtain for defendant from Lloyd's of London an insurance policy of the kind desired by defendant, and which it could file with the proper official of the city of Wichita and which would authorize the city to issue to defendant a license permitting it to operate its taxicabs in the city. Plaintiff obtained such a policy from the underwriters at Lloyd's, London, which policy was delivered to defendant and filed by it with the proper authorities of the city, and defendant's license to operate its taxicabs was duly issued. The premium was based upon the number of taxicabs operated by defendant, which varied from 65 to a few more, or perhaps a few less. The policy was written for one year and was effective from September 27, 1937, to September 27, 1938. The premium was payable monthly. Defendant paid for eleven months, but neglected or declined to pay for the last month. It is agreed the sum owed for the last month was $654.11, the amount for which the action was brought. Under its agreement with defendant plaintiff named certain persons in Wichita as agents of the underwriters to handle and adjust claims for damages arising under the policy, and as such agents they handled approximately 456 accident reports and paid the sums agreed upon in settlement, or recovered in judgment against defendant. Under a deductible provision of the policy defendant was to make a stated contribution upon the settlement of each accident. Although not material on the point involved in the action, it was stipulated that the underwriters, through plaintiff, paid $7,217.59, and that defendant, under the deductible provision of the policy, paid $1,888.40 in settlement of accident claims against defendant while operating its taxicabs within the time the policy was in force. It was stipulated the underwriters of the policy are all residents of England, and that none of them is licensed under the law of this state to write insurance policies in Kansas. The payments of premiums upon the policy were sent by defendant by mail to plaintiff at Kansas City, Mo. The full amount of the premium on the policy, less commissions, was paid by plaintiff to the underwriters at Lloyd's, of London, England.

The trial court specifically found as one of its conclusions of law that plaintiff was illegally writing insurance in the state of Kansas without having complied with G. S. 1935, 40-239 and 40-240. The first of these sections defines an insurance agent, and the second pertains to licenses of insurance agents. These sections appear not to be very pertinent here, for plaintiff did not act as an insurance agent in Kansas; it acted as an insurance agent in Missouri. The agents plaintiff named in Wichita were agents to adjust losses; not agents to write insurance.

Another section of our insurance code (G. S. 1935, 40-216) is commented on in the briefs. It reads as follows:

"No insurance company shall hereafter transact business in this state until certified copies of its charter, bylaws and amendments thereto shall have been filed with and approved by the commissioner of insurance. No contract of insurance or indemnity shall be issued or delivered in this state until the form of the same has been filed with the commissioner of insurance, nor if the commissioner of insurance give written notice within thirty days of such filing, to the company proposing to issue such contract, showing wherein the form of such contract does not comply with the requirements of the laws of this state; but the failure of any insurance company to comply with this section shall not constitute a defense to any action brought on its contracts."

This section appears not to be pertinent. Plaintiff is not an insurance company. The underwriters at Lloyd's, in London, who issued this policy are not parties to this action. Under the last sentence of the section just quoted the failure of the company which issues the policy to comply with the section is not a defense to an action on the policy; neither is it a defense to an action brought by the company on the policy. (*Walters v. Automobile Insurance Co.,* 116 Kan. 404, 226 Pac. 746; see, also, *Rishel v. Pacific Mut. Life Ins. Co. of California,* 78 F. 2d 881.)

Appellee cites *Yount v. Denning,* 52 Kan. 629, 35 Pac. 207, in which a real-estate agent was not permitted to recover a commission because he had not complied with the city ordinance which required him, before engaging in the business, to pay a fee and be licensed as such agent. The soundness of this decision has been seriously questioned. (*Fossett v. Lumber Co.,* 76 Kan. 428, 92 Pac. 883; *Manker v. Tough,* 79 Kan. 46, 98 Pac. 792; *Draper v. Miller,* 92 Kan. 275, 140 Pac. 890.) In any event, it is not applicable here, for plaintiff's contract by which this policy was issued was made in Missouri and not in Kansas.

The trial court also found as a conclusion of law that plaintiff was doing business in this state without having complied with the requirements of our statutes for foreign corporations to do business in this state, and as a consequence plaintiff is not entitled to bring an action in the courts of the state of Kansas. In support of that holding appellee cites G. S. 1935, 17-501, which provides that any corporation authorized under the laws of any other state, and seeking to do business in this state, shall make application to the state charter board, etc.; also 17-503, which provides for the issuance of a certificate from the charter board to the foreign corporation applying; and 17-505, which provides that after a foreign corporation has qualified and is authorized to do business it shall have the rights and privileges of domestic corporations; and 17-506, setting out what constitutes doing business within this state; also general authorities, 14A C. J., pages 1215, 1270, 1308, 1379, 1381 and 1397, respecting the general powers and duties of corporations; also *Stock Food Co. v. Jasper,* 76 Kan. 926, 92 Pac. 1094, and *Crane & Co. v. Snowden,* 112 Kan. 217, 210 Pac. 475, and authorities from other states pertaining to a corporation, foreign to the state in which it brings an action, using the courts of the state when it has not made application and been authorized to do business in such state.

Our statutes, cited and relied upon, were part of chapter 10, Laws of 1898, special session, which in section 12, amending a section of our General Statutes of 1868, providing for reports of corporations to the secretary of state, contains this provision:

"No action shall be maintained or recovery had in any of the courts of this state by any corporation doing business in this state without first obtaining the certificate of the secretary of state that the statements provided for in this section have been properly made."

This provision was carried along in subsequent amendments of the statute until it became section 1726 of the General Statutes of 1909. This section was specifically repealed by chapter 135, Laws of 1913, which, in place of forbidding the use of our courts to corporations not properly certified, provided penalties for a corporation doing business without having such certificate, and this has been carried forward in our statutes and become G. S. 1935, 17-705. In the meantime two cases decided by this court, in which the court, following the statute, held the corporation was not entitled to use the courts of the state, were appealed to the supreme court of the

United States, where the decision of this court was reversed. (*International Text-book Co. v. Pigg*, 76 Kan. 328, 91 Pac. 74; 217 U. S. 91, 54 L. Ed. 678, 30 S. Ct. 481; *Buck Stove & Range Co. v. Vickers*, 80 Kan. 29, 101 Pac. 668; 226 U. S. 205, 57 L. Ed. 189, 33 S. Ct. 41.) The ultimate holding of the supreme court of the United States was that this provision of our statutes was void as applied to the facts shown in the cases ruled upon. Perhaps the fact that this left such a narrow field, if any, in which the statute could operate prompted the legislative action in 1913, above mentioned. Since that legislation no statute of this state has been called to our attention which specifically prohibits a foreign corporation from any use of the courts of our state because of the fact that it has not applied for and received a certificate from the secretary of state to do business in this state as a foreign corporation. In fact, our legislature has recognized that foreign corporations may do some business in this state even though they have not complied with our statutes with reference to making application for and obtaining a certificate to do business in the state, and has provided a method of obtaining service on such corporations. (G. S. 1935, 17-509, and see *Weishaar v. Butters Pump & Equipment Co.*, 149 Kan. 842, 89 P. 2d 864; 122 A. L. R. 1190.)

In addition to what has just been said we note the fact that whatever business plaintiff was doing in this state had been completed before this action was brought. This action is for the balance due upon an account, computed on a contract made in Missouri, and is a suit for a money judgment for a debt due.

Such an action might have been maintained in this state prior to 1913. (See *Boggs v. Kelly*, 76 Kan. 9, 90 Pac. 765, and cases there cited.)

It necessarily follows that the plaintiff had a right to maintain this action, that the judgment of the court below must be reversed, and since the amount of the debt, and that it is actually owing from defendant to plaintiff, are stipulated, the trial court should be directed to enter judgment for plaintiff. It is so ordered.